(No. 50667.—

THOMAS D. THYGESEN *et al.*, Appellants, v. EDGAR F. CALLAHAN, Director of Financial Institutions, Appellee.

*Opinion filed January 26, 1979.*

WARD, J., took no part.

Donald E. Egan, Robert Y. Sperling, and Lee Ann Watson, of Katten, Muchin, Gitles, Zavis, Pearl & Galler, of Chicago, for appellants.

William J. Scott, Attorney General, of Springfield (Jerome Webb, Assistant Attorney General, and David Ardam, law student, of Chicago, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

The circuit court of Cook County found section 19.3 of the currency exchange act (Ill. Rev. Stat. 1977, ch. 16½, par. 49.3) constitutional. Plaintiffs, two currency exchange owners and operators, were allowed a direct appeal to this court pursuant to Supreme Court Rule 302(b) (58 Ill. 2d R. 302(b)).

Section 19.3 of the Act, which became effective on October 1, 1977, provides:

"The Director [of Financial Institutions] shall, by rules adopted in accordance with the Illinois Administrative Procedure Act, formulate and issue, within 120 days from the effective date of this amendatory Act, schedules of maximum rates which can be charged for check cashing and writing of money orders by community currency exchanges and ambulatory currency exchanges. Such rates may vary according to such circumstances and conditions

as the Director determines to be appropriate. The schedule so established may be modified by the Director from time to time by the same procedure. Any currency exchange may charge lower fees than those of the applicable maximum fee schedule after filing with the Director a schedule of the fees it proposes to use.

The rate schedules in effect for any currency exchange shall be prominently displayed on the premises of such currency exchanges in such fashion as shall be required by the Director." Ill. Rev. Stat. 1977, ch. 16½, par. 49.3.

Plaintiffs each own and operate one of the approximately 613 licensed community currency exchanges in Illinois. Prior to the enactment of the section, the rates which plaintiffs and all other currency exchange licensees could charge for cashing checks and writing money orders were not regulated in any manner by the Director of Financial Institutions (defendant), by the currency exchange act, or by any other statute. Consequently, plaintiffs had set their rates in open competition with other currency exchanges, banks, savings and loan associations, food stores, drug stores and other establishments offering similar services. Plaintiffs question neither the right of the legislature to set maximum rates nor its decision to delegate to defendant the power to set maximum rates. Rather, plaintiffs direct our attention to the failure of the legislature to provide any intelligible standards or guidelines for defendant to consult in effectuating the statutory mandate to set maximum rates. The total absence of standards or guidelines, plaintiffs assert, renders the section invalid as an unconstitutional delegation of legislative power. Ill. Const. 1970, art. IV, sec. 1.

Though courts and commentators have exhaustively discussed the varied and evolving aspects of the delegation of legislative power, no meaningful consensus has been reached regarding the need for standards or guidelines to validate legislative delegation. (See Merrill, *Standards—A*

*Safeguard for the Exercise of Delegated Power,* 47 Neb. L. Rev. 469 (1968); Davis, *A New Approach to Delegation,* 36 U. Chi. L. Rev. 713 (1969).) For this court's most recent and comprehensive pronouncement on the delegation of power to administrative agencies, we defer to *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361. In *Stofer,* the court reaffirmed its adherence to the guiding principle that intelligible standards or guidelines must accompany legislative delegations of power. This court, thus, implicitly recognized both the constitutional dimensions of the principle (Ill. Const. 1970, art. IV, sec. 1) and the practical functions which standards continue to serve. Intelligible standards help guide the administrative agency in the application of the statutes involved and, thereby, safeguard against the unwarranted or unintended extension of legislative delegation. They tend to insure that the legislature does not abdicate to the agency the legislature's primary responsibility to determine, from among the policy alternatives, those objectives the legislation is meant to achieve. Moreover, intelligible standards are indispensable to a meaningful judicial review of any action ultimately taken by the administrative agency.

The *Stofer* decision should not be read as a departure from prior case law. Rather, it clearly evidenced that the court was disturbed about the inconsistent application of the principle that standards or guidelines must accompany legislative delegations of power. The most cursory reading of the case law prior to *Stofer* reveals that the court was justified in its concern. (Compare the rigid applications of the principle in *People v. Tibbitts* (1973), 56 Ill. 2d 56, and *McDougall v. Lueder* (1945), 389 Ill. 141, 152-55, with the permissive applications in *Brown v. City of Chicago* (1969), 42 Ill. 2d 501, 506, *Board of Education v. Page* (1965), 33 Ill. 2d 372, and *People ex rel. Colletti v. Pate* (1964), 31 Ill. 2d 354.) Also see 1 F. Cooper, State Administrative Law 54-70 (1965), which would abolish

the requirement of standards because of its erratic application.

In an attempt to endow the requisite of intelligible standards with a conceptual foundation, the *Stofer* court declared that a legislative delegation is valid if it sufficiently identifies:

> "(1) The *persons* and *activities* potentially subject to regulations;
>
> (2) the *harm* sought to be prevented; and
>
> (3) the general *means* intended to be available to the administrator to prevent the identified harm." (Emphasis in original.) (*Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 372.)

In *Stofer,* the legislature had delegated to the Director of Insurance the power to promulgate a standard policy as a means of ensuring uniformity in the insurance of identical risks. The legislation clearly satisfied the first prong of the test by specifying that the regulation was to apply to fire and lightning insurance issued in Illinois. As to the second prong, the court noted that the legislature had articulated its intention to prevent a chaotic proliferation of disparate fire insurance policies. In discussing the general *means* intended to be available to the Director to prevent the identified harm (the third prong), the court cautioned:

> "[H]ad the legislature left the Director completely free to promulgate a 'reasonable' uniform fire insurance policy, we would have serious doubts as to the constitutionality of such uncabined discretion. [Citations.] We find, however, that the legislature has provided substantial additional standards defining the harm sought to be prevented and thereby limit[ed] the Director's discretion." (*Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 373-74.)

The court then referred to a related statutory provision which delegated to the Director the power to order the

discontinuation of any policy which contained "inconsistent, ambiguous or misleading clauses, or [any] exceptions or conditions that will unreasonably or deceptively affect the risks that are purported to be assumed by the policy ***." The court, reasoning that the delegated authority to promulgate a reasonable uniform policy necessarily incorporated the above-quoted limitation, held that the Director's discretion was limited sufficiently to withstand constitutional scrutiny.

Here, as in *Stofer,* the legislature clearly satisfied the first prong of the test. Those subject to regulation under section 19.3 of the currency exchange act are community and ambulatory currency exchanges, and the regulation is limited to the activities of cashing checks and issuing money orders. In contrast to *Stofer,* the legislature made no attempt to identify the "harm sought to be prevented" in delegating to defendant the power to set maximum rates and did not sufficiently identify the "means intended to be available *** to prevent the identified harm." Section 19.3 is devoid of any reference to the harm to be remedied. The currency exchange act contains no other provision which indicates, explicitly or implicitly, general purposes which the legislature might have intended to foster with respect to setting rates for cashing checks and issuing money orders.

The legislature's failure to convey, within the Act, the harm which it sought to remedy by the setting of maximum rates, is compounded by its failure to set forth any meaningful standards to guide defendant in setting the maximum rates. The only provision cited by defendant which in any way guides defendant's discretion in setting maximum rates is an omnibus provision which states:

> "The Director may make and enforce such *reasonable,* relevant regulations, directions, orders, decisions and findings as may be necessary for the execution and enforcement of this Act *and the purposes sought to be*

*attained herein."* (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 16½, par. 49.)

As we have already discussed, the Act fails to identify any purposes which the legislature might have sought to attain by providing for the establishment of maximum check-cashing and money-order rates. Defendant refers to various provisions in the Act that, he contends, limit his discretion to the promulgation of maximum rates which promote economic benefit and stability to both the currency exchanges and the public. The provisions cited by defendant, however, apply to regulatory matters, such as the issuance of licenses and the appointment of advisory board members, which are totally unrelated to the promulgation of maximum check-cashing and money-order rates. We find that the only statutory limitation on defendant's discretion in establishing maximum rates is that the rates be *reasonable.* This court, in *Stofer,* rightfully expressed serious doubt as to the constitutionality of such "uncabined discretion." Here, where the legislature has not only failed to provide any additional standards to guide defendant's discretion, but has failed to communicate to defendant the harm it intended to prevent, it is clear that the legislature has unlawfully delegated its power to set such maximum rates.

We hold section 19.3 of the currency exchange act (Ill. Rev. Stat. 1977, ch. 16½, par. 49.3) unconstitutional; therefore, the judgment of the circuit court is reversed.

*Judgment reversed.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.