THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DALE M. CARTER, Defendant-Appellant.

First District (5th Division)    No. 80-1851

Opinion filed November 20, 1981.—Rehearing denied December 23, 1981.

Donald Page Moore and Jo-Anne F. Wolfson, both of Chicago, for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Donald Townsend and Greig R. Siedor, Assistant Attorneys General, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendant was sentenced to three years imprisonment after he was tried by jury and convicted of four counts of violating the Franchise Disclosure Act (hereinafter F.D.A.) (Ill. Rev. Stat. 1979, ch. 121½, par. 701 *et seq.*). Several questions are presented for review, but we find that this appeal must be resolved based upon our consideration of two funda-

mental issues: (1) whether counts 1, 2 and 4 are void because the statutory provisions upon which they are based delegate legislative authority without providing an intelligible statutory guideline as a limitation on the exercise of the delegated power; and (2) whether the evidence is sufficient to prove defendant guilty of count 3 beyond a reasonable doubt.

We reverse. The following facts are material to our decision. ·

Defendant was chairman of the board and shareholder in Pie Tree, Inc., a Pennsylvania corporation which was in the business of selling franchises for Pie Tree restaurants and bakeries. In February of 1978, Pie Tree's attorney, Elmer S. Beatty, Jr., sent an application to the Illinois Attorney General's Office to register the corporation under the Franchise Disclosure Act. This application was received on March 2, 1978.

Section 16 of the F.D.A. (Ill. Rev. Stat. 1979, ch. 121½, par. 716) provides that a registration becomes effective 20 business days after receipt of the application, unless, within the 20-day review period, the Attorney General either denies the application outright or notifies "the franchisor or its representative that the materials filed do not meet the requirements of [the] Act."

On March 8, 1978, the Attorney General sent notice that Pie Tree's application was unacceptable and that the 20-day review period would be tolled until Pie Tree submitted additional material. One of the 15 items specified in the "stop letter" was a requirement that Pie Tree submit an agreement which provided for the escrow of monies paid to Pie Tree by franchise purchasers.

The "stop letter" was sent to Beatty at his law office in Pittsburgh, Pennsylvania. The return receipt was signed by a "Diana Roll," "Roth," or "Rath." However, there is no direct evidence that Beatty received the letter or that he discussed with defendant any of the items requested by the Attorney General.

In June of 1978, defendant negotiated the sale of a Pie Tree franchise to Roger Collier for $45,000. This agreement authorized Collier to operate a Pie Tree restaurant in Illinois and obligated Pie Tree to provide Collier with a fully equipped restaurant.

Although Collier paid $43,000 to Pie Tree, the money was not placed in escrow, and before Collier received the promised restaurant, Pie Tree went bankrupt.

Count 1 accused defendant of failing to comply with the requirements of sections 4(1) and 16 of the F.D.A (Ill. Rev. Stat. 1979, ch. 121½, pars. 704(1), 716) by selling a franchise in Illinois without first having registered as a franchisor. Count 2 accused defendant of failing to comply with the requirements of section 4(2) (Ill. Rev. Stat. 1979, ch. 121½, par.

704(2)) by selling a franchise in Illinois without providing a disclosure statement to the purchaser. And count 4 accused defendant of failing to comply with the requirements of section 16.1 (Ill. Rev. Stat. 1979, ch. 121½, par. 716.1) by selling a franchise in Illinois without first having registered each salesperson who represented the franchisor in this State.

Count 3 accused defendant of "engaging in an act, practice or course of business which acted as a fraud and deceipt [*sic*] upon Roger Collier, in violation of [F.D.A., §6(1)(c)] to wit: failing to place the franchise fee paid by Roger Collier in an escrow account as required by the Illinois Attorney General's Office."

Section 20, the crime-defining provision of the F.D.A. (Ill. Rev. Stat. 1979, ch. 121½, par. 720), makes it a Class 4 felony to sell a franchise in Illinois without complying with sections 4, 6, 16 and 16.1 (Ill. Rev. Stat. 1979, ch. 121½, pars. 704, 706, 716, 716.1). Even though section 20 creates a criminal law which is uniformly applicable to franchise sellers, section 12 of the F.D.A. (Ill. Rev. Stat. 1979, ch. 121½, par. 712) authorizes the Attorney General to grant individual exemptions from sections 4 and 16, the underlying provisions upon which counts 1 and 2 of the indictment are based. However, this exemption power does not apply to section 6, and it does not expressly apply to section 16.1.

OPINION

I

Defendant argues that the F.D.A violates the constitutional guarantees of due process and equal protection because section 12, when read in conjunction with section 20, authorizes the Attorney General to grant individual exemptions from the obligations of an otherwise uniformly applicable criminal statute.

Defendant also argues that it violates the constitutional requirement of separation of powers (Ill. Const. 1970, art. 2, §1; art. 4, §1) to authorize the Attorney General to, in effect, rewrite the provisions of an otherwise uniformly applicable criminal statute by granting prospective exemptions from that statute.

The separation of powers argument presents two questions. First, can the General Assembly ever delegate authority to grant prospective exemptions from an otherwise uniformly applicable criminal statute? We have been unable to find another case in which a legislature delegated such power to an executive officer or agency, but, "[i]t is an established rule that the General Assembly cannot delegate its general legislative power to determine what the law shall be." (*Hill v. Relyea* (1966), 34 Ill. 2d 552, 555, 216 N.E.2d 795.) Keeping this established rule in mind, compare the Attorney General's extraordinary power under sections 12

and 20 of the F.D.A. with the detailed procedures, including the check of the Governor's veto power, which the Constitution requires the General Assembly to follow whenever it seeks, by amendment, to add an exemption to an already enacted statute. Ill. Const. 1970, art. 4, §§7, 8 & 9.

Assuming that this exemption power is delegable, the second question is whether the F.D.A. provides an adequate guideline or standard for use in limiting and reviewing the exercise of the delegated power. A delegation of legislative authority is an unconstitutional violation of the separation of powers if the delegated power is not limited by an intelligible statutory guideline or standard. (*Hill v. Relyea*.) We believe it is appropriate to consider the second question first because it presents the narrower issue of whether, in the context of section 20, section 12 of the F.D.A. contains an intelligible guideline as a limitation on the delegated power.

Section 12 provides:

"The [Attorney General] may by rule or order, and subject to such terms and conditions as he may prescribe, exempt any franchise, franchisor, subfranchisor, franchise broker, or salesperson from Sections 4, [or] 16 * * * of this Act *if he finds that the enforcement of this Act is not necessary in the public interest* * * *." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 121½, par. 712.

Thus the statutory "limitation" on the Attorney General's exemption power is his or her individual determination of what is "in the public interest." When read in conjunction with section 20, section 12 of the F.D.A. authorizes the Attorney General to grant individual exemptions from an otherwise uniformly applicable criminal law whenever he or she concludes that it is "in the public interest."

■■ But, the General Assembly has already implicitly determined that it is *always* "in the public interest" to uniformly provide that it is a crime to fail to comply with the registration and disclosure requirements of the F.D.A. Since consistent application of these registration and disclosure requirements is an important means of protecting Illinois residents from substantial losses (Ill. Rev. Stat. 1979, ch. 121½, par. 702), it is neither clear nor comprehensible why it would ever be "not in the public interest" to consistently apply the uniform criminal provisions of the F.D.A. as enacted by the General Assembly. It is, therefore, internally inconsistent for the F.D.A. to provide that the Attorney General can rule that it would be "in the public interest" to grant exemptions from these otherwise consistently applicable criminal provisions. We therefore conclude that the phrase "in the public interest" is not an intelligible limitation on the exemption power in the context of an F.D.A. criminal prosecution. Consequently, when considered in conjunction with section 20, section 12 of the F.D.A. is an unconstitutional delegation of legislative power.

## II

As we already noted, section 12 expressly authorizes exemptions from sections 4 and 16, the provisions which form the underlying bases for counts 1 and 2. But before considering the extent to which the crime defining section 20 is severable from section 12, we must determine whether the exemption power indirectly applies to section 16.1, the provision upon which count 4 is based.

The first sentence of section 16.1 requires the registration of "franchise brokers" and of the salespersons who represent such "franchise brokers" in Illinois. There is no reference to section 16 in the first sentence of 16.1. However, the second sentence of section 16.1 requires a "franchisor" to register each salesperson who represents the franchisor in Illinois "by filing an application containing the information required by Section 16 * * *." (Ill. Rev. Stat. 1979, ch. 121½, par. 716.1.) Thus, the Attorney General's section 12 authority to grant exemptions from the requirements of section 16 indirectly includes authority to grant exemptions from the requirements of the second sentence of section 16.1.

Although the first sentence of section 16.1 imposes obligations solely on "franchise brokers," and the second sentence imposes obligations solely on "franchisors," count 4 does not specify, by numerical designation, whether it is based on an alleged violation of the first or second sentence. However, count 4 itself accuses defendant of violating section 16.1 by selling a franchise in Illinois "without first having registered each salesperson who represented *the franchisor* * * *." (Emphasis added.) Furthermore there is no mention of "franchise broker" in count 4.

Because "franchise brokers" and "franchisors" are separate types of franchise sellers under sections 3(3) and 3(22) of the F.D.A. (Ill. Rev. Stat. 1979, ch. 121½, par. 703), it is clear that count 4 is based solely on an alleged failure to comply with the requirements of the second sentence of section 16.1. And as we already concluded, the section 12 authority to grant exemptions from section 16 indirectly includes authority to grant exemptions from the requirements of the second sentence of section 16.1.

## III

Next, we must consider whether section 12 is severable from the portions of section 20 upon which counts 1, 2 and 4 of the indictment are based. Ill. Rev. Stat. 1979, ch. 121½, par. 739.

> "The settled and governing test of severability is whether the valid and invalid provisions of the Act are 'so mutually "connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently

\* \* \*".' [Citations omitted.] The provisions are not severable if 'they are essentially and inseparably connected in substance.' " *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 540, 236 N.E.2d 698.

■■ We recognize that the legislature is, as it should be, usually precise in defining the scope or applicability of the criminal laws which it enacts. However, in the case of the F.D.A., it is apparent that the General Assembly believed that the applicability of the statute, as enacted, was broader than it should be, and that it was, therefore, necessary to authorize the Attorney General to grant exemptions from the provisions of the Act. Therefore, we conclude that those portions of the crime-defining provisions of the F.D.A. which are involved in this case are so closely connected with and dependent upon the unconstitutional exemption provision that they are inseparable; the legislature would not have passed one without the other. Specifically, we hold that section 20 of the F.D.A. is invalid to the extent that it makes it a crime to fail to comply with sections 4 and 16 and the second sentence of section 16.1 of the F.D.A.

Since counts 1, 2 and 4 are based upon invalid portions of section 20, we conclude that these counts, and the convictions which are based upon them, are void. It should be noted, however, that our holdings on the unconstitutionality of section 12, and on the severability of section 20, are based on an analysis which views the exemption provision solely in the context of a criminal prosecution. We therefore express no opinion on the validity of section 12 in the context of a civil case.

The State notes that in *People v. Vandiver* (1971), 51 Ill. 2d 525, 529, 283 N.E.2d 681, the supreme court declined to consider a void-for-vagueness attack on the validity of a statute because the defendant's arguments were based on hypothetical situations which were not involved in that case. The supreme court stated that, "The hypothetical situations do not involve this defendant nor this case and the validity of the statute in light of the same will therefore not be considered." (51 Ill. 2d 525, 529.) But, unlike *Vandiver*, the unconstitutional feature of the statute under which defendant was prosecuted is pervasive. Moreover, the defendant in this case does not rely upon remote hypotheticals to support his attack on the F.D.A. Therefore, we conclude that the prudential rule of judicial self-restraint invoked in *Vandiver* is not applicable to the present case.

IV

Section 6(1)(c) of the F.D.A. provides:

"It is unlawful for any person, in connection with the offer or sale of any franchise, to directly or indirectly \* \* \* (c) Engage in any act, practice, or course of business which operates or would

operate as a fraud or deceit upon any person." Ill. Rev. Stat. 1979, ch. 121½, par. 706(1)(c).

Violation of section 6 is a crime, under section 20; but section 12 does not authorize the Attorney General to exempt franchise sellers from the prohibitions on fraudulent practices which are established by section 6. Our holdings on the validity of the other counts of the indictment are, therefore, not controlling on the question of the validity of this count.

Count 3 accused defendant of violating section 6(1)(c) by "failing to place the franchise fee paid by Roger Collier in an escrow account as required by the Illinois Attorney General's Office." The State's theory of criminal liability under count 3 is that, although it might ordinarily be lawful under section 6 for a franchisor to fail to use an escrow, this omission became a felony because of the requirement in the "stop letter" that Pie Tree submit an escrow agreement.

Defendant initially argues that section 6(1)(c) is void for vagueness on the grounds that it does not give reasonable notice of what conduct is made criminal. Instead of defining what is meant when the terms "fraud" and "deceit" are used in section 6(1)(c), the definitions section of the F.D.A. merely exacerbates the vagueness by stating that, " '[f]raud' and 'deceit' are not limited to common law fraud or deceit." Ill. Rev. Stat. 1979, ch. 121½, par. 703(11).

However, we need not address the question of the constitutional validity of section 6 because we agree with one of defendant's alternative contentions: that the evidence is not sufficient to prove him guilty beyond a reasonable doubt.

The State does not dispute that, under its own theory of the case, it was obligated to prove beyond a reasonable doubt that defendant knew that the "stop letter" sent to Pie Tree's attorney required Pie Tree to submit an escrow agreement.

Although there was direct evidence, including Collier's testimony, that defendant knew Pie Tree's Illinois registration had not been approved at the time the franchise agreement with Collier was executed, there was no direct evidence to show that defendant knew about the demand that Pie Tree submit an escrow agreement. Instead, the State relied solely upon circumstantial evidence to prove this element of its case. This circumstantial evidence consisted of showing that the "stop letter" was sent to Pie Tree's attorney, and on the fact that defendant knew the Illinois application had not been approved.

According to the State, "This evidence, coupled with Collier's testimony that defendant knew of the Illinois franchise application, is more than sufficient for the jury to infer that defendant knew full well the contents of the March 8, 1978, 'stop letter.' "

We disagree because this circumstantial evidence is not sufficient to exclude every reasonable hypothesis for the facts which is consistent with innocence.

■■ Even if we infer that Beatty received the "stop letter" and informed defendant that more paperwork was needed on the Illinois application, Beatty did not testify at trial, and there is no way of knowing whether Beatty discussed, with defendant, all the contents of that letter. It is, of course, *possible* that Beatty discussed the escrow requirement with defendant. But it is equally possible that Beatty did not. We simply cannot conclude that this evidence of a mere possibility is sufficient to prove, beyond a reasonable doubt, that defendant knew about the Attorney General's escrow requirement. Consequently, we find that the evidence is not sufficient to prove defendant guilty of count 3 beyond a reasonable doubt.

For all the preceding reasons, defendant's conviction is reversed.

Reversed.

MEJDA and WILSON, JJ., concur.