**Andreas PROIMOS, et al.,**
**Plaintiffs-Appellees,**

v.

**FAIR AUTOMOTIVE REPAIR, INC.,**
**and Gayle S. Wakefield,**
**Defendants-Appellants.**

No. 86–1509.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1986.

Decided Jan. 12, 1987.

---

Robert V. Gildo, Robert V. Gildo, Ltd., Wheaton, Ill., for defendants-appellants.

William Van Hagey, Van Hagey & Bogan, Ltd., Mundelein, Ill., for plaintiffs-appellees.

Before COFFEY and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.*

EASTERBROOK, Circuit Judge.

Fair Automotive Repair franchises muffler shops. Andreas Proimos and the other plaintiffs acquired four of the 39 franchises Fair issued. Fair supplied a method of doing business, designs of shops, and other assistance. In 1984 the owners of four franchises repudiated their contracts with Fair, changed the names of their shops, and continued to sell mufflers at the same locations in northern Illinois. They filed suit under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961–68, contending that Fair is an enterprise operated through a pattern of fraud; the complaints included three pendent claims under the law of Illinois, two based on the Illinois Franchise Disclosure Act, Ill.Rev.Stat. ch. 121½ ¶¶ 701–40, and the other based on common law fraud. Fair responded by invoking a clause in each franchise contract forbidding competition. Fair sought a preliminary injunction that would compel the franchisees to get out of the muffler repair business.

The district court denied Fair's motion after an evidentiary hearing at which the only witness was Gayle Wakefield, Fair's founder, controlling investor, and chief executive officer. The court concluded that some of the information in the offering circular Fair provided under the Franchise Disclosure Act was misleading. The circular stated that Wakefield founded Fair in 1976 "and has been responsible for its growth and development since its inception." The court thought this misleading because Wakefield did not turn his full-time attention to Fair until 1980. Until then he had been an officer of Car–X Systems, Inc., another franchisor of muffler shops, and an officer and investor in a corporation that operated four Car–X franchises in Florida. The circular disclosed Wakefield's affiliation with the Florida operation, but the judge thought this misleading as well. It stated that Wakefield had sold the four franchises in Florida to the chairman of Car–X's board but did not disclose that the venture had been, in Wakefield's own words, a "disaster" and that the only consideration for the sale was the assumption of existing liabilities.

Two of the plaintiffs' four franchises were acquired after two of Fair's suppliers had required Fair to pay for goods on delivery. One of the four also received "projections" of profits that the district

* Honorable Robert A. Grant, of the Northern District of Indiana, sitting by designation.

judge thought violated the rule that projections not precede the sale of the franchise. One of the four purchased the land for the shop through a real estate affiliate of Fair, and the affiliate charged a commission, which the district court thought violated a representation that there would be no collateral charges. None of the four franchisees received the comprehensive operations manual that the franchise contract promised; the court found this an unambiguous breach of contract. And the court also found that Fair had engaged in deception by placing ads in the Yellow Pages for non-existent Fair Muffler Shops.

The district court denied Fair's request for a preliminary injunction for a number of reasons. It stated that Fair would not suffer irreparable injury because Fair could recover damages at the end of the case; that the plaintiffs would suffer irreparable injury from the grant of preliminary relief because they would lose the value of their new trade names and reputations; that Fair had behaved inequitably and could not obtain relief because of "unclean hands"; that Fair had violated the Franchise Disclosure Act, allowing the plaintiffs to rescind the franchises under Ill.Rev.Stat. Ch. 121½ ¶ 721(2); and that the franchisees were using none of Fair's trade secrets.

Fair contends that the district court misstated or misunderstood the evidence. It insists, for example, that the suppliers' requirement that Fair pay in cash had nothing to do with any franchisee's ability to obtain materials on time or at a satisfactory price; that the projections of profits were provided to lenders so that they would assist the putative franchisees and were not part of the sales pitch; that the franchisee who bought land through the affiliate was told about the relationship and knew that the affiliate would receive a fee; that Fair made the information in the operations manual available at request even though it refused to furnish the manual itself; and that the ads were placed in the Yellow Pages only to ensure that shops planning to open during the next year would not be denied advertising. Perhaps some of Fair's responses are worth something, but given the deferential standard we apply when reviewing grants or denials of preliminary relief, Fair's quibbles are to no avail. See *My Pie International, Inc. v. Debould, Inc.,* 687 F.2d 919, 922 (7th Cir.1982). The record contains enough to support the findings and inferences at this early stage of the litigation.

■ Whether the findings and inferences support the denial of injunctive relief is another matter. Several portions of the district court's analysis leave us uneasy despite the substantial deference that is appropriate. See *Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429 (7th Cir.1986); *American Hospital Supply Corp. v. Hospital Products Ltd.,* 780 F.2d 589 (7th Cir. 1986); *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380 (7th Cir. 1984). For example, the district court apparently believed that any party that has behaved inequitably in any respect has forfeited its entitlement to an injunction; this is not correct as a matter of equity practice in Illinois or the federal courts. See *Polk Bros., Inc. v. Forest City Enterprises, Inc.,* 776 F.2d 185, 193–95 (7th Cir.1985) (discussing federal and Illinois practice); *Shondel v. McDermott,* 775 F.2d 859, 868 (7th Cir.1985). "Equity is no longer granted or withheld according to the chancellor's sensibilities and his regard for the uprightness of the parties. The injunction, like other remedies, is designed to achieve compliance with established rules, and even the wicked have a right to treatment according to the rules." *Polk Bros.,* 776 F.2d at 193. So although the placement of bogus ads in the Yellow Pages might be a fraud on consumers of mufflers, this would not prevent Fair from enforcing its contracts against its franchisees. The rule against bilking consumers does not have among its remedies the nullification of otherwise-valid contracts between defrauder and third parties, and this limitation carries over to equity practice.

■ The court's conclusion that the franchisees are not using any of Fair's trade secrets also is questionable. Fair provided

a great deal of information, from names of suppliers to the appropriate methods of replacing mufflers. The franchisees promised by contract to keep all of this confidential and not to use it in competition with Fair. Information is the most valuable asset of many a business. The district court's observation that much of the information could be observed or learned in some other way does not foreclose the possibility that the information is still a trade secret. For example, suppliers of parts may be discovered by looking in a book, as the court emphasized, but the reliability of these suppliers and the terms on which they may be induced to deal may be valuable secrets. Cf. *Greenberg v. FDA*, 803 F.2d 1213 (D.C.Cir.1986), in which a divided court debated the question whether information about who sells to whom is a trade secret. What divided the panel is whether such information has such obvious commercial value as a secret that it may be deemed a trade secret on summary judgment (as Judge Bork urged in dissent) or instead whether a trial is necessary to determine the degree of secrecy (as the majority concluded). The district court in this case did not discuss the commercial value of the information Fair furnished to the plaintiffs, the costs they would have incurred in discovering the information without Fair's aid, or many of the other ingredients of the legal definition of trade secrets.

Then we have the court's decision that the franchisees could rescind because Fair's disclosure circular contained misleading statements (that Fair was founded in 1976) and material omissions (that Wakefield had been unsuccessful with Car-X franchises in Florida and that Fair had been denied credit by two suppliers). If the circular indeed had material false information or omissions, Illinois law entitles the franchisees to rescission. Ill.Rev.Stat. ch. 121½ ¶¶ 706(1)(b), 708, 721(2). Rescission would eliminate the no-competition clause that Fair is trying to enforce. But the right to rescission lasts only 90 days after the franchisee "shall have knowledge of a violation of this Act", ¶ 721(2)(b); see

also *My Pie*, 687 F.2d at 922–26. The district court did not determine when each of the four franchisees learned of Fair's omissions and misstatements. One of the franchisees denounced his franchise more than two years after opening his shop, and all waited more than a year after signing on. Timing may be important. So too may questions of materiality and reliance. The Supreme Court of Illinois has held that the elements of an action for common law fraud in a franchise case include materiality, intent, reliance, and damages. See *Soules v. General Motors Corp.*, 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980).

*Soules* did not discuss the Franchise Disclosure Act. As we said in *My Pie*, 687 F.2d at 922, decided eight years after the passage of the Act, almost no state cases discuss the statute. Another four years have passed without a significant new case in the courts of Illinois on the subject.[1] Either franchisors in Illinois are uncommonly law abiding and franchisees uncommonly placid, or something is diverting cases away from the courts of Illinois. Could it be the ease of filing a RICO suit in federal court and appending a claim under the Franchise Disclosure Act, so that diversity of citizenship is no longer needed to litigate state claims? The parties may think this wonderful, but a coordinate system of jurisdiction in which federal courts apply rules of the states' creation presupposes a substantial body of decisions by state courts. It is hard to be a witty ventriloquist's dummy when the ventriloquist has laryngitis.

At all events, the critical portion of the Act (¶ 706(2)) is modeled on the SEC's Rule 10b–5, which has been understood to contain the same elements that *Soules* holds are part of fraud. See *TSC Industries, Inc. v. Northway*, 426 U.S. 438, 448–49, 96 S.Ct. 2126, 2131–32, 48 L.Ed.2d 757 (1976); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Teamsters Local 282 Pension*

---

**1.** See *People v. Carter*, 97 Ill.2d 133, 73 Ill.Dec. 329, 454 N.E.2d 189 (1982), and *Port City Leasing v. Loffredo*, 114 Ill.App.3d 775, 70 Ill.Dec. 560, 449 N.E.2d 907 (3d Dist.1983), both on peripheral issues.

*Trust Fund v. Angelos,* 762 F.2d 522, 528–30 (7th Cir.1985). The materiality of a statement or omission depends on context; a statement is material if a reasonable investor would have considered it important in deciding how to act, see *TSC Industries,* 426 U.S. at 448–49, 96 S.Ct. at 2131–32, and it is therefore necessary to determine how the omission (or falsity) fit into the pattern of other disclosures. The district court did not discuss what else the offering circular contained or whether any of the statements or omissions were material in light of these disclosures. It is not clear how the statements or omissions would have affected the anticipated profitability of the franchisees, so it is hard to determine materiality, an objective question relating to anticipated effects. We do not even know how things turned out. Fair represents that these four were among the most profitable franchisees in its system, and it insinuates that they jumped ship in order to capitalize on their success without continuing to compensate Fair for the information that made their success profitable. If this is true, it might bear on the materiality of the statements and omissions. Finally, neither the district court nor the parties discussed the plaintiffs' reliance on the statements in the offering circular. *Soules* states that detrimental reliance is an element of common law fraud in Illinois. Whether it is an element of a claim for rescission under the Franchise Disclosure Act is a question on which we express no view. Compare *Brenkman v. Belmont Marketing, Inc.,* 43 Ill.Dec. 500, 504, 87 Ill.App.3d 1060, 1065, 410 N.E.2d 500, 504 (3d Dist. 1980), with *Port City Leasing v. Loffredo,* 70 Ill.Dec. 560, 114 Ill.App. 775, 449 N.E.2d 907, 910 (3d Dist. 1983).

■ Although the district court's findings do not make an airtight case for the denial of an injunction, Fair's arguments do not overcome the court's conclusions that Fair will not suffer irreparable injury from delay and that the grant of a preliminary injunction would greatly injure the franchisees by reducing to zero the value of their new trade names and business good will. The balancing of the equitable factors is a task in which the district court possesses great discretion because there is no "right" answer. See *Avnet* and *Roland Machinery.* The principle that monetary loss is not "irreparable injury" is in play here. Fair does not argue to us that it will go broke if it does not get the injunction (cf. *Roland,* which presented such an argument) or that the plaintiffs will not be good for any damages awarded at the end of the case. Fair therefore has not demonstrated that the district court abused its discretion.

We have expatiated on the merits, rather than beginning and ending with the preceding paragraph, only because the district court itself did not stop. Having denied Fair's motion for a preliminary injunction, the court continued: "the plaintiffs are granted summary judgment on the issue of injunctive relief." The parties read this as a denial of Fair's request for a permanent injunction. There are several problems. The discussion so far shows that the record has not been developed sufficiently to permit a final decision and that essential findings and conclusions have yet to be made. More, there was no pending motion for summary judgment that the district court could grant. At the close of the hearing plaintiffs' counsel stated so explicitly.[2] Perforce Fair was not on notice that it had to produce its whole case. It did not; only Wakefield testified.

■ Rule 65(a)(2) allows a judge to consolidate the hearing of a motion for a preliminary injunction with the trial on the

---

2. THE COURT: I have back from the plaintiffs a motion for judgment or directed judgment on his [sic] preliminary motion.

　MR. ROVELL [plaintiffs' lawyer]: That is correct.

　THE COURT: But I also have from the plaintiff [sic] a motion for summary judgment under Rule 56.

　MR. ROVELL: Judge, I don't think you have that. I think you have a motion for preliminary injunction from the plaintiffs.

　MR. GILDO [Fair's lawyer]: Which motion and which evidenciary [sic] presentation has not taken place.

　THE COURT: In other words, I have cross-motions for a preliminary injunction.

　MR. ROVELL: But I don't think there is a Rule 56 summary judgment.

　THE COURT: Now I am very clear on that.

merits, but he may do this only if the parties consent or if they receive timely notice allowing them to gather and present all the evidence that would be pertinent at a trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981); *Pughsley v. 3750 Lake Shore Drive Cooperative Building*, 463 F.2d 1055, 1057 (7th Cir. 1972). Fair did not consent to consolidation (it was not asked), and the case was not ready for trial on the merits. Rule 65(a)(2) also provides that consolidation shall be "applied [so] as to save to the parties any rights they may have to trial by jury." See also *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). The findings the district judge made, if viewed as "final" and therefore having preclusive effect, would remove from the jury most of the principal matters affecting Fair's liability in damages to the plaintiffs.

■ We also have some doubt that the hearing was conducted with the care that would be necessary to support a final judgment. The parties and the court discussed ways to abbreviate what had become a lengthy hearing. Counsel for the plaintiffs asked whether the court would like a presentation of authorities on what might be done, to which the judge replied:

THE COURT: I think that I can do the research, particularly in light of the material which all of us judges have received this year on the Cleveland method, what is called the summary judgment trial. That is what I am using here, where they try one issue or a half of an issue. This is a question of whether it is or isn't binding. But they have never run across a case where, when it becomes binding, that the parties don't agree to have that segment of the trial go as a part of the trial. I think that I can make my decision on it.

This reference to the "Cleveland method" baffled the parties, and Fair protests the novel methods of taking evidence that ensued. The district judge indicated that he would freely accept hearsay and even the declarations of counsel in lieu of direct evidence.

The district judge must have been referring to the summary *jury* trial pioneered by Judge Lambros of Cleveland. See Thomas D. Lambros, *The Summary Jury Trial and Other Alternative Methods of Dispute Resolution*, 103 F.R.D. 461 (1984). The summary jury trial is a presentation of evidence by counsel (rather than witnesses) to an advisory jury, whose decision becomes the basis of settlement. The summary procedures are not designed for the resolution of factual disputes by judges. The rules of procedure and evidence apply to all proceedings, including bench trials. See *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 313 (7th Cir.1986). Cf. Richard A. Posner, *The Summary Jury Trial and Other Methods of Alternative Dispute Resolution: Some Cautionary Observations*, 53 U.Chi.L.Rev. 366 (1986). Procedures designed to help lawyers settle cases are not appropriate for judicial resolution of contested issues.

So although we affirm the denial of a preliminary injunction, we set aside the grant of "summary judgment" and the denial of a permanent injunction. The case must proceed free of any preclusive effect of the findings entered so far. Circuit Rule 18 shall apply on remand.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.