2025 IL App (1st) 241076

FIRST DISTRICT
SECOND DIVISION
August 12, 2025

No. 1-24-1076

| | | |
|---|---|---|
| MIDWEST ELECTRONICS GAMING, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CH 12175 |
| | ) | |
| THE ILLINOIS GAMING BOARD, an Agency of the | ) | |
| State of Illinois, and CHARLES SCHMADEKE, | ) | |
| DIONNE R. HAYDEN, SEAN BRANNON, JIM KOLAR, | ) | |
| and MARCUS FRUCHTER, in Their Official Capacities | ) | |
| as Members of The Illinois Gaming Board, | ) | Honorable |
| | ) | Anna M. Loftus, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

OPINION

¶ 1    Plaintiff, Midwest Electronics Gaming, LLC (Midwest), is a video gaming terminal operator under the Video Gaming Act (Act) (230 ILCS 40/1 *et seq.* (West 2014)). Midwest entered into a use agreement with a licensed establishment authorized by the Act to have a video gaming terminal (VGT) placed in its location. See *id.* § 5 (defining "Terminal operator" and "Licensed establishment"). That establishment is not a party to the underlying complaint or this appeal. The use agreement contained an automatic renewal provision that, at the time the use agreement was entered, was not prohibited by the Act. Defendant, the Illinois Gaming Board (Board), subsequently amended the rules to prohibit such automatic renewals. Plaintiff contacted the Board for an opinion on whether the automatic renewal provision in the use agreement at issue remained valid after the amendment to the rules. The Board opined that it did not.

¶ 2    Plaintiff filed a complaint for declaratory judgment seeking a declaration that (1) the new rule does not apply to any use agreements entered into by plaintiff prior to the date the new rule

was adopted, (2) the Board's "new interpretation" of the rule in its communications with plaintiff (that the rule applies to the use agreement at issue in this case) is an unauthorized "rule" under the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2014)), and (3) retroactive application of the new rule is unconstitutional. The parties filed cross-motions for summary judgment. Following a hearing on the motions, the circuit court of Cook County granted plaintiff's motion in part and denied it in part and granted defendants' motion in part and denied it in part. At issue in this appeal is the circuit court's judgment that the automatic renewal provision in plaintiff's use agreement remained valid after the effective date of the new rule because plaintiff entered the use agreement before the effective date of the new rule.

¶ 3    For the following reasons, we find that the new provision prohibits the automatic renewal provision contained in the use agreement and that the use agreement by its own terms adopted subsequent changes in the rules. Therefore, we affirm in part, and reverse in part.

¶ 4                                I. BACKGROUND

¶ 5    We begin with a brief overview of the regulatory structure around video gaming in Illinois. The Act authorizes the placement of video gaming terminals (VGTs) in licensed establishments "subject to the rules promulgated by the [Illinois Gaming] Board pursuant to the Illinois Administrative Procedure Act." 230 ILCS 40/58 (West 2014). The statutes states that the Board has

> "jurisdiction over and shall supervise all gaming operations governed by this Act.
> The Board shall have all powers necessary and proper to fully and effectively
> execute the provisions of this Act, including, but not limited to, the following:
>
> * * *

> (3) To adopt rules for the purpose of administering the provisions of this Act and to prescribe rules, regulations, and conditions under which all video gaming in the State shall be conducted." *Id.* §78(a).

¶ 6    The Act provides that, "No video gaming terminal may be placed in any licensed establishment *** unless the owner or agent of the owner of the licensed establishment *** has entered into a written use agreement with the terminal operator for placement of the terminals." *Id.* § 25(e). The rules promulgated by the Board define "Use agreement" as follows:

> "A contractual agreement between a licensed terminal operator and a licensed video gaming location establishing terms and conditions for placement and operation of video gaming terminals by the licensed terminal operator within the premises of the licensed video gaming location, and complying with all of the minimum standards for use agreements contained in Section 1800.320." 11 Ill. Adm. Code 1800.110 (2024).

¶ 7    Plaintiff's complaint for declaratory judgment alleged that, prior to March 2017, plaintiff entered use agreements under the Act with various licensed establishments and that many of those use agreements contained a provision stating that the term of the use agreement would automatically renew unless the establishment provided written notice of intent to terminate the use agreement.

¶ 8    Beginning in March 2017, the Board began proposing an amendment to Rule 1800.320 (hereinafter, "Rule 320") (41 Ill. Reg. 3070 (eff. Mar. 17, 2017)). On February 2, 2018, the Board adopted rule 320(a)(7), which states that a use agreement must "Not provide for automatic renewal in the absence of cancellation." 11 Ill. Adm. Code 1800.320(a)(7), amended at 42 Ill.

Reg. 2970 (eff. Feb. 2, 2018). (The rule is now codified as rule 320(a)(9)). The "first notice" and "second notice" for the rulemaking surrounding rule 320(a)(7), as well as the final notice of the new rule and its effective date, published in the Illinois Register, all stated that the proposed rulemaking was to impose requirements "on all use agreements entered into between terminal operators and licensed video gaming locations on or after the rulemaking's effective date." 42 Ill. Reg. 2970 (eff. Feb. 2, 2018).

¶ 9       Plaintiff's complaint alleged that, on or about October 1, 2015, it entered a use agreement with a certain establishment with a provision that the agreement would automatically renew effective May 16, 2022. The complaint further alleged that, in April 2022, an agent of the Board informed plaintiff that it must execute a new use agreement with that establishment without an automatic renewal provision or, alternatively execute an addendum to the use agreement with that establishment that eliminates the automatic renewal clause. Plaintiff attached copies of e-mail correspondence between plaintiff's counsel and the Board to its complaint.

¶ 10      On May 2, 2022, plaintiff's counsel e-mailed the Board, noting the Board's agent's communication and noting that plaintiff entered a use agreement with the establishment named in the complaint "prior to the new rule." The e-mail sought "guidance on this and whether [the Board] has made a determination regarding the retroactivity of the rule." In a May 10, 2022, e-mail attached as an exhibit to the complaint, the Board's counsel wrote, in pertinent part, as follows:

> "After review, the use agreement is effective now and should not hinder the
> relocation or addition of machines at [the establishment.] *** However,
> Paragraph 28 [of the use agreement] provides that rule revisions affecting use
> agreements 'shall be considered as being fully incorporated into and made part of'

the use agreement. Accordingly, Rule 320(a)(7) is incorporated and the agreement

does not automatically renew."

In subsequent email correspondence, plaintiff and the Board disagreed on whether rule 320(a)(7)

applies to use agreements entered prior to its effective date, based on, *inter alia*, the statements

during the rulemaking process mentioned above.

¶ 11    The use agreement at issue contains the following provision:

"28. Should the [Board] make any revisions, addendums, and/or modifications to

the rules and regulations as they relate to VGTs that in any way affect this

Agreement, then such revisions, addendums, and/or modifications shall be

considered as being fully incorporated into and made part of this Agreement and

may be added as additional Exhibits and considered part of this Agreement

without any additional consent or signatures required by Terminal Operator

[(plaintiff)] or Establishment and all parties shall be fully bound by the provisions

of the Agreement including the additional Exhibits."

¶ 12    The use agreement at issue also provides as follows:

"1. Establishment agrees that Terminal Operator shall have the exclusive right to

install, service and maintain at a minimum one (1) Video Gaming Terminal

hereinafter 'VGT', subject to the terms and conditions of this Agreement and in

compliance with the definitions as described in Illinois Video Gaming Act,

hereinafter 'Act', and subsequent acts, legislation, rules and regulations as

promulgated by the State of Illinois, and in compliance with and as regulated by

the [Board,] or any other regulatory body as set forth by the State of Illinois. ***

THIS AGREEMENT IS INTENDED TO COMPLY WITH THE ACT AND,

WHEREVER POSSIBLE INCORPORATE THE LANGUAGE OF THE ACT.

ANY DIRECT CONFLICT BETWEEN LANGUAGE IN THIS AGREEMENT

AND THE ACT IS STRICTLY UNINTENTIONAL." (All capitals in original.)

¶ 13    Plaintiff's complaint alleged that the Board's interpretation of rule 320(a)(7) is unauthorized by law as it constitutes a new, unauthorized rule in violation of the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2014)); "enaction of a new rule that invalidates auto renewal clauses in previously-use [*sic*] agreements executed prior to the effective date of the rule would constitute unconstitutional 'retrospective legislation' " and that rule 320(a)(7) is "illegal and void" because it "contains use agreement restrictions beyond those set forth in the Act." The complaint sought a declaratory judgment, including, specifically, a judgment, "Declaring that Rule 320(a)(7) does not apply to any use agreements entered into by and between Midwest *** and a licensed establishment prior to February 2, 2018."

¶ 14    Plaintiff and the Board each filed motions for summary judgment. Plaintiff argued that rule 320(a)(7) must be applied prospectively only. Plaintiff also argued that the Board's position that rule 320(a)(7) applies to the use agreement at issue under the "change in law" provision in the agreement is "unconstitutional" or "an unlawful rule under the Administrative Procedure Act." In any event, the "change in law" provision does not apply to rule 320(a)(7) because rule 320(a)(7) "does not 'in any way affect' the Use Agreement." Finally, plaintiff argued that the Act only requires that use agreements be in writing but rule 320(a) imposes many more requirements on use agreements and, therefore, it is void as exceeding the scope and authority of the Act.

¶ 15    In pertinent part, the Board's motion for summary judgment argued that paragraph 1 of the use agreement obligates plaintiff to comply with subsequent rules and act "in compliance

with and as regulated by" the Board. The Board argued that, in entering this use agreement, plaintiff "undertook a risk in that it could not predict what subsequent rules and regulations [the Board] would provide." The Board argued that, nevertheless, as plaintiff's operation must comply with subsequently enacted rules and regulations, plaintiff cannot escape from the application of Rule 320(a)(7).

¶ 16    The Board also argued that, pursuant to paragraph 28 of the use agreement, plaintiff "undertook an obligation to be bound by future-enacted revisions, addendums, and/or modifications to the rules and regulations relating to Video Gaming Terminals." The Board argued that under paragraph 28 of the use agreement the modification to rule 320 "is fully incorporated into the Use Agreement, and Plaintiff is fully bound by it." The Board refuted plaintiff's argument that its "interpretation" of rule 320(a)(7) to apply to the use agreement was itself a new rule, arguing that the plain language of the rule does not support that argument and, regardless, the Board "is not reaching backwards to apply [rule 320(a)(7)] to the earlier-created Use Agreement. *** [I]n the 2015 Use Agreement, Plaintiff agreed to be bound by subsequently enacted regulations and rules ***." Finally, the Board argued that rule 320(a)(7) is not void as exceeding the scope of the Act because the Act provides "vast rulemaking authority" to the Board, and the Board has "exclusive, original jurisdiction over use agreements' validity and enforceability."

¶ 17    Furthermore, the Board argued that plaintiff's complaint is moot because plaintiff entered into a new use agreement on May 17, 2022, and "the video gaming terminals at the establishment are active." Therefore, "there is no actual controversy between the parties," as required for a declaratory judgment complaint. In response to the Board's mootness argument, plaintiff argued that, although it did enter into an addendum to the existing use agreement with the establishment

extending the term of the use agreement for an additional five years, that addendum "does not delete or otherwise amend the autorenew provision in the use Agreement that is at issue in this action"; therefore, plaintiff argued, "a live controversy continues to exist." Alternatively, plaintiff argued that according to an affidavit attached to the response, "there are identical use agreements currently in force that contain the exact same autorenew provisions." Plaintiff argued that this case is subject to review under the mootness exception for issues capable of repetition yet evading review. The Board's reply did not address the exception to mootness argument but did argue that the addendum acknowledges that the use agreement at issue expired because the addendum extends the use agreement for an additional five years after the *expiration* of the current agreement. The Board argued that plaintiff cannot maintain that Rule 320 does not apply to the Use Agreement and the Use Agreement auto-renews and simultaneously enter into an agreement acknowledging that the Use Agreement expired.

¶ 18 On April 19, 2024, the trial court incorporated and memorialized its oral ruling in a written judgment on the parties' motions for summary judgment. During its oral ruling, the trial court first addressed the Board's mootness argument. The trial court found that it did not have to construe the addendum to determine whether it effectively eliminates the auto-renewal clause because,

> "even if the addendum made any declaratory judgment action moot, I agree with plaintiff that this case is subject to an exception to the mootness doctrine. Notably [the Board] does not address the exception argument in its reply.
>
> This case is subject to review by this Court because it contains issues capable of repetition yet evading review. Specifically that one of the factors is the challenged action must be too short in duration to be fully litigated before its end.

And the second factor is there must be a reasonable expectation that the complaining party will be subject to the same action again. It does not appear to be any dispute that those two factors have been met so this case meets both of those requirements."

¶ 19 The trial court found that the "compliance with subsequent Acts, legislation, rules, and regulations" referenced in paragraph 1 relates only to the agreement to install a VGT and the right to service and maintain one VGT at the establishment.

¶ 20 The trial court construed paragraph 28 of the use agreement and found that the limitation to amendments "that relate to VGTs" "means something." The court found that the reference in the use agreement to rules and regulations that "relate to VGTs" references the statute that specifies the number of VGTs certain establishments can have on site. Moreover, the court found that the rule does not "affect this agreement because it did not become effective until 2018 and the use agreement here *** was entered into prior to that date" and the Board established that the rule was to be applied only to use agreements entered into on or after the effective date.

¶ 21 The trial court found that the Board's representation to plaintiff that plaintiff's use agreement incorporates the new rule is not a statement of general applicability—and therefore is not a new rule—because incorporation of the rule by a change in law provision would depend on the language of the change in law provision in each use agreement. The court also found that the Board's rules "requiring certain provisions to be included in the use agreements does not expand or limit the scope of the Act's provision regarding use agreements."

¶ 22 The trial court's written judgment declared that rule 320(a)(7) "is to be applied prospectively, not retrospectively." The court rejected the argument that "the change in law clause" in the use agreement incorporates rule 320(a)(7) and therefore applies to the use

agreement at issue in this case (without specifically referencing paragraph 1 or paragraph 28, or both). The court declared that, "Rule 320(a)(7) does not apply to any use agreements entered into by and between Plaintiff and a licensed establishment containing the same change in law clause as at issue in this case prior to February 2, 2018." The trial court denied plaintiff's request "for a judicial declaration that the [Board's] new interpretation of Rule 320(a)(7) is an unauthorized rule under the Administrative Procedure Act." The court found that the Board's interpretation "was limited to the facts surrounding Plaintiff's use agreement and not a Rule of general applicability." The court also denied plaintiff's request for a declaration that rule 320(a) exceeds the scope and authority of section 25 of the Act.

¶ 23    This appeal followed.

¶ 24                                II. ANALYSIS

¶ 25    This is an appeal of a judgment on cross-motions for summary judgment on a complaint for declaratory judgment. "We review the circuit court's ruling on cross-motions for summary judgment *de novo*." *Shakman v. Department of Revenue*, 2019 IL App (1st) 182197, ¶ 17. This case also involves issues of statutory construction and construction of a contract. "The proper construction of a statute and the regulations thereunder are questions of law reviewed *de novo*. [Citation.] 'In construing regulations promulgated by an administrative agency, the same rules used to interpret statutes apply.' [Citation.]" *Alliance for the Great Lakes v. Department of Natural Resources*, 2020 IL App (1st) 182587, ¶ 37. "The construction of a contract is a question of law that we review *de novo*." *Paper Source LLC v. Sugar Beets, Inc.*, 2025 IL App (1st) 231878, ¶ 15.

¶ 26    "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. [Citation.]

However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. "Under a *de novo* standard of review, we use the same analysis that a trial court would with no deference to the trial court's decision." *Hampton v. Metropolitan Water Reclamation District of Greater Chicago*, 2025 IL App (1st) 231381, ¶ 46. "This court may affirm a grant of summary judgment on any basis appearing in the record, regardless of whether the lower courts relied upon that ground." *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34.

¶ 27    Plaintiff filed the complaint pursuant to section 2-701 of the Code of Civil Procedure (735 ILCS 5/2-701 (West 2022)).

> "Section 2-701(a) of the Code provides that a circuit court may, 'in cases of actual controversy, make binding declarations of rights, having the force of final judgments,' including 'the construction of any *** contract or other written instrument, and a declaration of the rights of the parties interested.' 735 ILCS 5/2-701(a) (West 2022). The declaratory judgment statute is 'liberally construed and should not be restricted by unduly technical interpretations' [citation], though its application must still comport with the general rule that '[c]ourts cannot pass judgment on mere abstract propositions of law, render advisory opinions, or give legal advice as to future events' [citation]. Declaratory relief is only proper if there is an actual legal controversy between the parties, *i.e.*, if there is 'a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof.' [Citation.]

If the controversy is theoretical, rather than actual, then the claim is premature. [Citation.]" *RSA Properties Mission Hills, P.C. v. Mission Hills Homeowners Ass'n*, 2024 IL App (1st) 231526, ¶¶ 22-23.

¶ 28 We initially address the question of whether this appeal is moot. The Board does not pursue the mootness issue on appeal. Nonetheless, "we must review whether this case is moot, even if neither party raises the issue, because mootness is a question of jurisdiction." *Tirio v. Dalton*, 2019 IL App (2d) 181019, ¶ 21.

"It is a basic tenet of justiciability that reviewing courts will not decide moot or abstract questions or render advisory opinions. [Citation.] An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006) (citing *In re Tekela*, 202 Ill. 2d 282, 292-93 (2002)).

"[T]here are three established exceptions to the mootness doctrine: (1) the 'public interest' exception, applicable where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties; (2) the 'capable of repetition' exception, applicable to cases involving events of short duration that are capable of repetition, yet evading review; and (3) the 'collateral consequences exception,' applicable where the involuntary treatment order could return to plague the respondent in some future proceedings or affect other aspects of the respondent's life." *In re Marcus S.*, 2022 IL App (3d) 170014, ¶ 43.

¶ 29     The Board argued that the case is moot because plaintiff entered an addendum to its use agreement with the establishment, which the Board contends eliminated the auto-renew provision from the use agreement.

¶ 30     Plaintiff disputes the contention that the addendum with the establishment eliminated the auto-renew provision and asserts that the auto-renew provision remains in place—and therefore the case is not moot.

¶ 31     We find that this controversy is moot because intervening events have rendered it impossible for this court to grant effectual relief to plaintiff. *In re J.T.*, 221 Ill. 2d at 349-50. Our judgment will not affect the parties because plaintiff has entered a separate agreement to renew the use agreement with the named establishment rendering the auto-renew provision irrelevant to the *present* controversy. See *In re Tekela*, 202 Ill. 2d at 292-93 ("the case is rendered moot because a ruling on the issue cannot have any practical effect on the controversy. [Citations.] 'The fact that a case is pending on appeal when the events which render an issue moot does not alter this conclusion.' [Citation.]").

¶ 32     Nonetheless, we find that the public interest exception applies. The regulation of gambling is a matter of public interest and importance. As the Board argued, it is authorized to "adopt rules for the purpose of administering the provisions of [the] Act and to prescribe rules, regulations, and conditions under which all video gaming in the State shall be conducted. Such rules and regulations are to provide for the prevention of practices detrimental to the public interest." 230 ILCS 40/78 (West 2014). Plaintiff has represented that it has a number of similar use agreements already in place, so the issue is bound to recur. A decision by this court on this issue will help to guide the Board in the performance of its duty to determine the validity and enforceability of use agreements. *J&J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 32

("The Act *** confers authority on the Gaming Board to determine the validity and enforceability of contracts that purport to control the location and operation of video gaming terminals within licensed establishments.").

¶ 33    Turning to the merits, the Board argues that rule 320(a)(7) applies to the use agreement at issue because plaintiff "chose to draft and enter into a use agreement that incorporated that future rule change." The Board argues that pursuant to paragraph 1 of the use agreement, plaintiff conditioned the use agreement on compliance with "subsequent acts, legislation, rules and regulations as promulgated by the State of Illinois, and in compliance with and as regulated by the [Board]." The Board argues that "paragraph 1 alone would warrant concluding that the Agreement incorporated Rule 320(a)(7)."

¶ 34    Furthermore, the Board argues, pursuant to paragraph 28, plaintiff specifically incorporated "subsequent regulations like Rule 320(a)(7)" and thereby "bound itself to comply with that amendment's disallowance of auto-renewals."

¶ 35     Regarding paragraph 28, plaintiff refutes that rule 320(a)(7) either relates to VGTs or affected the use agreement at issue. Specifically, plaintiff argues that rule 320(a)(7) does not relate to *physical* VGTs and, therefore, does not fall within the scope of paragraph 28. Plaintiff also argues that rule 320(a)(7) did not affect the use agreement here because rule 320(a)(7) applies only prospectively and, therefore, had no affect on the use agreement entered prior to its effective date.

¶ 36    We have no need to resolve the parties' disagreement on the question of whether rule 320(a)(7) "relates to VGTs" or "affects the use agreement" because we agree with the Board that, pursuant to paragraph 1 of the use agreement, plaintiff bound itself to comply with rule 320(a)(7)'s disallowance of auto-renewals. We state expressly that we reach this conclusion

without any deference to the Board's interpretation of the use agreement. "As a general rule, the construction, interpretation, or legal effect of a contract is a matter to be determined by the court as a question of law." (Internal quotation marks omitted.) *Village of Riverdale v. Nosmo Kings, LLC*, 2023 IL App (1st) 221380, ¶ 16; see *Rural Electric Convenience Cooperative Co. v. Illinois Commerce Comm'n*, 75 Ill. 2d 142, 149 (1979) ("A greater degree of certainty can be obtained by adherence to established principles of contractual interpretation than by undue deference to a given agency's particular expertise."). Therefore, the parties' respective arguments concerning whether deference is owed to either party's interpretation of the use agreement, and plaintiff's argument that the Board "has no basis for arguing what [plaintiff's] own contractual language is interpreted to mean," are inapposite. We find that the use agreement is clear and unambiguous and we have construed the use agreement as a matter of law. See *Steenes v. MAC Property Management, LLC*, 2014 IL App (1st) 120719, ¶ 18 ("Where the terms of a contract are clear and unambiguous, they must be given effect as written, and under those circumstances, the meaning of the contract is a question of law." (Internal quotation marks omitted.)).

¶ 37      In support of the argument that the parties to the use agreement could contractually adopt a new rule that did not apply "retroactively" the Board cites one case from a foreign jurisdiction: *Angora Enterprises, Inc. v. Cole*, 439 So. 2d 832, 834-35 (Fla. 1983). In *Cole*, the issue was whether the parties to a condominium contract "expressly consented to the incorporation of [a certain statute] into the terms of the contract by virtue of the language in the [contract]." *Id.* at 834. The contract in that case stated that certain property was "submitted to Condominium ownership, pursuant to the Condominium Act of the State of Florida *** and the provisions of said Act are hereby incorporated by reference and included herein thereby." (Emphasis and internal quotation marks omitted.) *Id.* The contract later defined the Condominium Act (Fla. Stat.

§ 718.101 *et seq.* (2020)) as the "Condominium Act *** as the same may be amended from time to time." (Emphasis omitted.) *Cole*, 439 So. 2d at 834. In an earlier case, the court held that the statute "could not be applied to pre-1974 leases because the legislature did not intend retroactive effect." *Id.* at 835. The lease at issue was a pre-1974 lease. *Id.* at 833. The Supreme Court of Florida found that the controlling difference between the earlier case finding that the statute did not have retroactive effect and the *Cole* case, in which the court found the statute did apply to the contract, was that in the earlier case, "there was no language in the *** documents evidencing consent on the part of the lessor to incorporate the Condominium Act and its future amendments into the contract." *Id.* at 835. The Supreme Court of Florida found that "the parties intended to be bound by future amendments to the condominium act and as such [the statute] is applicable and enforceable under the facts of the instant case." *Id.* at 834.

¶ 38     We agree with the reasoning of the Supreme Court of Florida. In this case, as in the Florida *Cole* case, the language in paragraph 1 of the use agreement evidences plaintiff's consent to incorporate and be bound by future amendments to the Act. Thus, as pertains to the language in paragraph 1, *People ex rel. Burris v. Memorial Consultants, Inc.*, 224 Ill. App. 3d 653 (1992), is distinguishable. In *Memorial Consultants, Inc.*, a cemetery operator entered a settlement agreement and stipulation with the State Comptroller to deposit a percentage of the selling price of contracts for burial vaults into trust as required by the Illinois Funeral or Burial Funds Act (Ill. Rev. Stat. 1971, ch. 111½, § 73.101 *et seq.*). *Memorial Consultants, Inc.*, 224 Ill. App. 3d at 654-55. The stipulation contained a provision stating that the Comptroller agreed to amend the funding requirement "if the Funeral and Burial Funds Act is amended at a future date to require a lesser funding requirement *** if applicable." (Internal quotation marks omitted.) *Id.* at 655. The parties' agreement also provided that if the funding requirement was amended the Comptroller

would return any excess funding. *Id.* When the law was amended to reduce the funding requirement, the cemetery operator sued to enforce the settlement agreement. *Id.*

¶ 39 The Comptroller argued that "if a future amendment was not retroactive, then it was not applicable to the existing contracts [that were the subject of the settlement] and no amendment to the trust agreement would be required." *Id.* at 656. The Comptroller also argued that only a retroactive amendment would result in "excess funding" but, "if any amendment had only a prospective effect, then there would be no excess funding to return." *Id.* On appeal, the court found that the settlement agreement required the Comptroller to amend the funding requirement on the existing contracts "only if an amendment to the [law] applies retroactively." *Id.* at 657. The court relied on the "if applicable" language in the agreement and found that

> "if an amendment to the [law] is applicable to these (*i.e.*, existing) contracts, then the
> funding requirement would be lowered. There is no dispute in this case that the
> amendment *** is not applicable to existing contracts and therefore the Comptroller is
> not required to lower the funding requirements and refund the 'excess funding.' " *Id.*

¶ 40 In this case, paragraph 1 of the use agreement does not contain language, similar to the "if applicable" language in *Memorial Consultants, Inc.*, in any way limiting the parties' agreement to be bound by subsequent changes in the law. On the contrary, paragraph 1 evinces the parties' intent to be, and to remain, in compliance with the Act and rules "wherever possible." We concede paragraph 28 may contain such limiting language, but we do not construe what that language means in this context because doing so in this case would amount to an advisory opinion. The particular facts of *Memorial Consultants, Inc.* may further distinguish this case from *Memorial Consultants, Inc.*, as it applies to paragraph 28, if at all; but those questions are not before this court.

¶ 41      We also find that there is no "impairment" of a contract right because the parties to the contract agreed to the change in their rights. Therefore, plaintiff's reliance on *Griffin v. City of North Chicago*, 112 Ill. App. 3d 901 (1983), is misplaced. In *Griffin*, the court recognized that,

> "The legislature cannot pass a retrospective law impairing the obligation of a contract nor deprive a party of a vested right. [Citation.] A vested right is more than a mere expectation based upon an anticipated continuance of existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property. [Citations.] If an existing law changes by amendment or repeal prior to the vesting of a right, no cause to object arises." *Id.* at 905.

¶ 42      *Griffin* is inapplicable here, not necessarily because the rule has no retroactive effect on plaintiff's use agreement (and nothing herein should be construed to answer that question), but because the Board did not take away or impair any vested right or "create" a new obligation. If plaintiff had any rights in the continuance of the existing law (a matter on which we pass no judgment), plaintiff voluntarily waived that right when plaintiff agreed to be bound by subsequent changes in the law. If the obligation to enter into a new use agreement is a "new obligation," it is self-imposed. It is evident plaintiff expected to benefit from changes in the rules, such as if the Board permitted plaintiff to place additional VGTs at the establishment. Plaintiff chose not to limit the subsequent rules to which it agreed to be bound. Plaintiff cannot complain that its choice was not as beneficial as plaintiff may have hoped.

¶ 43      Plaintiff cites no authority for the proposition that the parties to a contract cannot voluntarily modify their obligations conditioned on subsequent legislative events. Nor is that the law. See *Jones v. Loaleen Mutual Benefit Ass'n*, 337 Ill. 431, 438 (1929) ("Neither the old association nor the legislature could take any action which would impair the contract of the

certificate holder *unless such certificate holder consented to such change*." (Emphasis added.)). Plaintiff and the establishment consented to modify their obligations upon the occurrence of a subsequent event, that event being the adoption of a new rule by the Board. We find that paragraph 1 of the use agreement binds the parties to abide by rule 320(a)(7), which, in this instance, means that the parties are bound not to utilize the automatic renewal provision, because that provision is not "in compliance with *** subsequent *** rules *** as promulgated by the State of Illinois." We do not find plaintiff's arguments to the contrary persuasive.

¶ 44    First, plaintiff argues that rule 320(a)(7) does not relate to its right to "install, service, and maintain VGTs"; therefore, paragraph 1 does not apply to rule 320(a)(7). "The placement of video gaming terminals in licensed establishments *** shall be subject to the rules promulgated by the Board pursuant to the Illinois Administrative Procedure Act." 230 ILCS 40/58 (West 2014). Plaintiff agrees, quoting the trial court, that pursuant to paragraph 1, it may only "service, install, and maintain one video gaming terminal at the establishment *** in compliance with subsequent Acts, legislation, rules, and regulations." The rules provide that plaintiff only has a "right" to install and maintain a VGT if it has a valid use agreement with the establishment. *Id.* § 25. Rule 320 sets the minimum standards for use agreements. 11 Ill. Adm. Code 1800.320 (2022). Prior to the adoption of rule 320(a)(7), plaintiff had to comply with rule 320 to "install, service, and maintain VGTs" at the establishment. In paragraph 1 of the use agreement, plaintiff agreed that its right to install, service, and maintain VGTs at the establishment was based on "compliance with *** *subsequent* acts, legislation, rules and regulations." (Emphasis added.) Thus, we find that rule 320(a)(7) does "relate" to plaintiff's right to install, service, and maintain, VGTs and that rule 320(a)(7) does, therefore, fall within the scope of paragraph 1 of the use agreement.

¶ 45 Second, plaintiff argues that its "obligation to continually comply with Board Rules does not require it to amend contractual terms, absent the promulgation of a constitutional, retrospective rule."

> "Because we presume that parties agree to contractual language purposefully, we read the provisions of a contract in light of the whole, not in isolation, and we give effect to each and every word, if possible. [Citation.] Thus, we will not interpret a contract in a way that would nullify its provisions or render them meaningless." (Internal quotation marks omitted.) *Vision Energy, LLC v. Smith*, 2025 IL App (3d) 240114, ¶ 54.

Accepting plaintiff's implicit concession that, pursuant to paragraph 1 of the use agreement, it must *continually* comply with Board rules (*i.e.*, subsequent rules), a limitation on that obligation to "retrospective rule[s]" would render that portion of paragraph 1 meaningless. Plaintiff would have had an obligation to comply with "a constitutional, retrospective rule," absent paragraph 1. Limiting paragraph 1 to apply only to retrospective rules would nullify that provision in the use agreement. Third, plaintiff argues that it has no obligation to comply with an amended rule that the Board "proclaimed to not apply to the October 1, 2015 Use Agreement." (Emphasis omitted.) However, as demonstrated above, plaintiff obligated itself to do exactly that.

¶ 46 The Board's preadoption statements and this court's jurisprudence concerning the prospective application of the amended rule are irrelevant. Plaintiff complains that the Board stated the rule would apply prospectively "without exception" but claims that now the Board is implementing an "exception" for use agreements with a change in law provision. We do not find that the Board is implementing an exception to the prospective application of the rule. We also do not find that the Board is departing from its preadoption statements that the rule would apply to use agreements entered on or after its effective date. "The Board" is not applying the rule to

plaintiff's use agreement—plaintiff did that. The Board is doing nothing more than recognizing the parties' right to contract for their mutual obligations under the use agreement and that, under this use agreement, the parties agreed to be bound by subsequent rule amendments. See generally, *Triple 7 Illinois, LLC v. Gaming & Entertainment Management-Illinois, LLC*, 2013 IL App (3d) 120860, ¶ 22 (citing *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201 (1997), for the proposition that "laws and public policy of the state permit and require freedom of contracting between competent parties").

¶ 47 Plaintiff obligated itself to place VGTs at the establishment in compliance with subsequent rules. That obligation was not prohibited by the rules when plaintiff entered it. (Nor was it required at the time plaintiff entered the use agreement at issue in this case, although now such a provision is required to be in a use agreement. 11 Ill. Adm. Code 1800.320(a)(12) (2022). We note that, contrary to plaintiff's claim, we have not found the Board to argue that this provision means that all amended laws will apply retrospectively to all use agreements because all use agreements must contain a change in law provision. The effect of rule 320(a)(12) is not before this court, and we decline to address it.) The Board has no right to interfere with plaintiff's lawful, voluntary, self-imposed obligation, and it is not doing so in this case.

¶ 48 Because the obligation to comply with future rules was a voluntary undertaking by plaintiff, we have no need to address plaintiff's alternative argument that the Board's alleged "new interpretation" of rule 320(a)(7) is a "new rule" in violation of the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2014)). Plaintiff's obligation to comply with rule 320(a)(7) does not arise by operation of any "rule" or pronouncement of the Board. We reject plaintiff's argument that rule 320 is itself void because it is more restrictive than the Act. Plaintiff argues that the only restriction on use agreements in the Act is that they be in writing,

whereas rule 320 imposes many more restrictions on use agreements without clear guidance from the legislature.

¶ 49     "[A]dministrative rules can neither limit nor extend the scope of a statute." (Internal quotation marks omitted.) *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 340 (2009). Video gaming is controlled by the strictures of the Act. *J&J Ventures Gaming, LLC*, 2016 IL 119870, ¶ 26 ("gambling on video gaming terminals is permitted in Illinois only as authorized by the Act"). We find that implementing rules setting minimum requirements for the use agreements that are required by the Act is an exercise of the authority granted to the Board by the Act, not an expansion of the scope of the Act. Nonetheless, "intelligible standards or guidelines must accompany legislative delegations of power." *Thygesen v. Callahan*, 74 Ill. 2d 404, 408 (1979) (citing *Stofer v. Motor Vehicle Casualty Co.*, 68 Ill. 2d 361 (1977)). Our supreme court has found an unlawful delegation of legislative power where the legislature fails to provide any standards to guide an agency's discretion or to communicate the harm the agency is intended to prevent. *Id.* at 411. However, the court has found that

"a legislative delegation is valid if it sufficiently identifies:

'(1) The persons and activities potentially subject to regulations;

(2) the harm sought to be prevented; and

(3) the general means intended to be available to the administrator to prevent the

identified harm.' " (Emphasis omitted.) *Id.* at 409 (quoting *Stofer v. Motor Vehicle

Casualty Co.*, 68 Ill. 2d 361, 372 (1977)).

¶ 50     We find each requirement is met in this case. The Act sets out the Board's authority. 230 ILCS 40/78 (West 2014). Section 78 of the Act identifies the persons and activities subject to regulation. "The Board shall have jurisdiction over and shall supervise all gaming operations

governed by this Act." *Id.* § 78(a). The Act identifies the harm sought to be prevented. The Act directs that the Board's rules "are to provide for the prevention of practices detrimental to the public interest and for the best interests of video gaming." *Id.* § 78(a)(3). Finally, the Act identifies the means available to the Board to prevent practices detrimental to the public interest and for the best interests of video gaming. The Act provides that the Board may

> "adopt rules for the purpose of administering the provisions of this Act and ***
> prescribe rules, regulations, and conditions ***. *** (i) regarding the inspection
> of such establishments and the review of any permits or licenses necessary to
> operate an establishment under any laws or regulations applicable to
> establishments, (ii) to impose penalties for violations of this Act and its rules, and
> (iii) establishing standards for advertising video gaming." *Id.*

The Act mandates use agreements like the one at issue in this case (*id.* § 25(e)), and rule 320(a)(7) is a rule for the purpose of administering that provision.

¶ 51    We do not agree with plaintiff that only limiting the Board's authority to administering the provisions of the Act to the prevention of practices detrimental to the public or video gaming constitutes an " 'uncabined discretion' " granted to the Board. See *Thygesen*, 74 Ill. 2d at 411. In *Thygesen*, our supreme court did *not* find that that limitations such as "promot[ing] economic benefit and stability to *** the public" were not a sufficient limitation on the administrative agency's discretion; rather, the court found that those limitations did not apply to the authority at issue in that case. See *id.* Further, the *Thygesen* court based its holding that the legislature unlawfully delegated its power in that case on the combination of the legislature's failure "to provide any additional standards to guide [the agency's] discretion [or to] communicate to [the agency] the harm it intended to prevent." *Id.* In this case, the legislature has done both.

Furthermore, as the Board points out, our supreme court has acknowledged, without question, that, "[p]ursuant to its authority under the Act, the Board has adopted regulations" that "define the term '[u]se agreement' [citation] and establish the minimum standards that use agreements must satisfy." *J&J Ventures Gaming, LLC*, 2016 IL 119870, ¶¶ 28-29. We find that rule 320 is not void.

¶ 52     We affirm the trial court's judgments that rule 320(a)(7) is not an unauthorized rule under the Illinois Administrative Procedure Act and that rule 320 is not void. We reverse the trial court's judgment that the change in law clause in paragraph 1 of the use agreement does not incorporate rule 320(a)(7).

¶ 53                                     III. CONCLUSION

¶ 54     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part.

¶ 55     Affirmed in part and reversed in part.

*Midwest Electronics Gaming, LLC v. Illinois Gaming Board*, 2025 IL App (1st) 241076

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-12175; the Hon. Anna M. Loftus, Judge, presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellants. |
| **Attorneys for Appellee:** | Joseph Collins and William Bogot, of Fox Rothschild LLP, of Chicago, for appellee. |